# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

TRACY MARIE ROWLING,

                        Plaintiff,

-vs-

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

                        Defendant.

DECISION AND ORDER

16-CV-6577-CJS

---

## APPEARANCES

For the Plaintiff:           Brandi Christine Smith, Esq.
                              Kenneth R. Hiller, Esq.
                              Law Offices of Kenneth Hiller
                              6000 North Bailey Avenue, Suite 1A
                              Amherst, NY 14226
                              (716) 564-3288

For the Defendant:         Padma Ghatage, Esq.
                              Social Security Administration
                              Office of General Counsel
                              26 Federal Plaza, Room 3904
                              New York, NY 10278
                              (212) 264-0981

                              Kathryn L. Smith, A.U.S.A.
                              Office of the United States Attorney
                              for the Western District of New York
                              100 State Street, Fifth Floor
                              Rochester, New York 14614
                              (585) 263-6760

## INTRODUCTION

**Siragusa, J.** Represented by counsel, Tracy Marie Rowling ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act seeking review of the final

decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability and supplemental security income benefits. Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Commissioner's motion is denied and Plaintiff's motion is granted.

## PROCEDURAL HISTORY

On February 4, 2013, Plaintiff filed simultaneous claims for Title II disability benefits and Title XVI supplemental security income benefits. She alleged disability because of depression, anxiety, seizure disorder, lumbar disc disease, history of alcohol abuse, fibromyalgia, and obesity. The Social Security Administration denied her claims on May 15, 2013, and she appeared before an Administrative Law Judge ("ALJ") for a hearing on December 16, 2014, at which a vocational expert also testified. Justin Goldstein, Esq., represented Plaintiff at the hearing. The ALJ issued a decision on February 27, 2015, which Plaintiff appealed. The Appeals Council affirmed the ALJ's decision on June 20, 2016, and Plaintiff commenced this appeal pursuant to 42 U.S.C. § 405(g) on August 19, 2016.

## THE ALJ'S DECISION

Applying the Commissioner's five-step sequential evaluation for adjudicating disability claims, 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2015. At step one, the ALJ found she had not engaged in substantial gainful activity since February 1, 2013, which was also the onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: depression; anxiety; seizure disorder; lumbar disc disease; history of alcohol abuse;

fibromyalgia; and obesity. R. 24. However, at step three, the ALJ also determined that the impairments, either singularly, or together, did not meet or medically exceed the severity of one of the Commissioner's listed impairments. Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b). He added the following restrictions: that she should avoid concentrated exposure to respiratory irritants such as dust, odors, fumes, and extremes in temperature and humidity; and that she can engage in simple routine tasks, and have occasional interaction with co-workers and the general public. R. 26. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work as a medical health secretary, home health aide, shift manager, or nurse assistant. R. 29–30.

At step five, considering her age, education, work experience, and RFC, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, specifically: cleaner housekeeper, or mail clerk. Accordingly, the ALJ found Plaintiff not disabled. R. 31.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*,

221 F.3d 126, 131 (2d Cir. 2000). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff makes the following arguments: the ALJ failed to properly evaluate the mental medical opinion evidence, arbitrarily rejecting the examining opinion of Kavitha Finnity, Ph.D. that contained disabling limitations; he accorded great weight to a non-examining medical opinion; and he failed to discuss the opinions of LMHC Dietz, or give a reason for his rejection of that opinion.

In *Petrie v. Astrue,* 412 Fed. Appx. 40 (2011), the Second Circuit reviewed the law applicable to mental impairments:

> In addition to the five-step analysis, the regulations "require application of a 'special technique' at the second and third steps of the five-step framework." *Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir.2008); *see also* 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique "requires a reviewing authority to determine first whether the claimant has a 'medically determinable mental impairment.'" *Kohler,* 546 F.3d at 265–66 (quoting 20 C.F.R. § 404.1520a(b)(1)). "If the claimant is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),' ... which specifies four broad functional areas." *Id.* at 266 (quoting 20 C.F.R. § 404.1520a(b)(2)). These areas are: "(1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." *Id.* (citing 20 C.F.R. § 404.1520a(c)(3)), *see also* 20 C.F.R § 416.920a(c)(3).
>
> Each of the first three areas is rated on a scale of "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The fourth area is rated on a scale of "[n]one, one or two, three, four or more." *Id.* "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." *Kohler,* 546 F.3d at 266.

> By contrast, if the claimant's mental impairment is severe, then the reviewing authority must "compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders" to determine whether the impairment "meets or is equivalent in severity to any listed mental disorder." *Id.* (citing 20 C.F.R. § 404.1520a(d)(2)). If yes, then the claimant is "disabled." *Id.* If not, the reviewing authority must then assess the claimant's residual functional capacity. *Id.* (citing 20 C.F.R. § 404.1520a(d)(3)).

*Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011).

Christine Ransom, Ph.D., completed an employability assessment on behalf of the Monroe County Department of Social Services and issued a report dated September 27, 2010. R. 627–32. Dr. Ransom outlined Plaintiff's mental health treatment and medications, and reported that Plaintiff felt she was generally getting worse and that her condition had not improved as a result of treatment. R. 628. Dr. Ransom noted her diagnosis as follows:

| | |
|---|---|
| AXIS I: | Panic disorder without agoraphobia, currently moderate. Major depressive disorder, currently moderate. |
| AXIS II: | None. |
| AXIS III: | Acid reflux, sleep apnea and fibromyalgia. |
| Axis IV: | Death of her 2 month-old infant from SIDS death. |
| AXIS V: | 64. |

R. 630. Dr. Ransom, using a form that had three categories (Normal, Moderate, and Very Limited), determined that plaintiff had moderate limitations in following, understanding and remembering simple instructions and directions; regularly attending to a routine and maintaining a schedule; maintaining basic standards of hygiene and grooming; and ability to use public transportation. Dr. Ransom rated these areas of function as Very Limited: performing complex tasks independently; capable of maintaining attention and concentration for rote tasks; and capable of low stress and simple tasks. R. 630.

The ALJ's decision does not address Dr. Ransom's report by name, but does identify it as Exhibit 16F and concludes that the report, predating the alleged onset date by three years, "is too remote in time for consideration here." R. 29. Plaintiff's memorandum does not take issue with the ALJ's non-consideration of Dr. Ransom's report.

On March 21, 2013, at the request of the Monroe County Department of Social Services, Dr. Finnity examined Plaintiff. Her report is contained on pages 627–39 of the Record. Dr. Finnity diagnosed Plaintiff with the following:

| | |
|---|---|
| Axis I: | Major depressive disorder.<br>Panic disorder without agoraphobia.<br>Rule out post-traumatic stress disorder.<br>Alcohol abuse, in sustained remission. |
| Axis II: | None. |
| Axis III: | Fibromyalgia.<br>Acid reflux.<br>Sleep apnea. |
| Axis IV: | Other psychological stressors. |
| Axis V: | 51. |

R. 637. Dr. Finnity concluded that Plaintiff was moderately limited in the following functional areas: capable of maintaining attention and concentration for rote tasks; regularly attending to routine and maintaining a schedule; and maintaining basic standards of hygiene and grooming. R. 637. She determined that Plaintiff would be unable to engage in employment for six months and that she seek psychological or psychiatric treatment. R. 638. She wrote: "The client is currently suffering from symptoms of depression and anxiety which is limiting vocational functioning at this time." R. 638. The date of this report is March 21, 2013.

Dr. Finnity saw Plaintiff again on March 29, 2013, this time at the behest of the Social Security Administration. In her report, the doctor concluded the following:

> There is no evidence in limitation of the claimant's ability to follow and understand simple directions and instructions and perform simple tasks. She is mildly limited in her ability to maintain attention and concentration. She is mildly to moderately limited in her ability to maintain a regular schedule due to psychiatric symptoms. There is no evidence in her limitation to learn new tasks, perform complex tasks, or make appropriate decisions. She is moderately limited in her ability to relate with others and deal with stress due to psychiatric symptoms.
>
> The results of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis.

R. 511. The ALJ accorded "some weight" to Dr. Finnity's opinion, but wrote that "the portion of her opinion, which indicates that the claimant's mental problems may significantly interfere with her daily function, is given little weight as it is not only contradicted by the medical evidence as a whole, but also by her own examination findings (Exhibit 10F, pp. 3–4)." R. 28.

The Commissioner argues that Dr. Finnity's statement as to whether psychiatric problems may significantly interfere was vague. Plaintiff counters that this is merely *post hoc* rationalization by counsel and the Court should not consider it, as the ALJ in his opinion did not give that reason. *See Marthe v. Colvin*, No. 6:15-CV-6436 (MAT), 2016 WL 3514126, *9 (W.D.N.Y. Jun. 28, 2016) (Telesca, J.) ("the rationales suggested by the Commissioner were not actually relied upon by the ALJ. This is improper…."). The Court agrees, and will analyze the ALJ's decision based on the criteria he used in his opinion. The ALJ stated that the medical evidence as a whole, and Dr. Finnity's own examination findings,

contradicted her conclusion that "psychiatric problems…may significantly interfere with [Plaintiff's] ability to function on a daily basis."

Turning first to Dr. Finnity's findings, she wrote in her mental status exam of March 29, 2013, that Plaintiff presented a depressed and anxious affect, her mood was dysthymic. She stated that Plaintiff's memory skills were intact, cognitive functioning was average, and her insight and judgment were fair. She could take care of herself (dressing, bathing and grooming) and could cook, clean, do laundry and manage her money. R. 511. Dr. Finnity noted Plaintiff's claims that she had difficulty sleeping, loss of appetite, dysphoric mood, crying, hopelessness, irritability, loss of interest, loss of energy, social withdrawal, and difficult with concentration. R. 509–10. The doctor also noted that Plaintiff told her she had excessive anxiety and restlessness and panic attacks primarily in crowds and on the bus.

At the time of Dr. Finnity's examination, Plaintiff was starting psychotherapy at Genesee Mental Health Center ("GMHC"), and would be attending every two weeks. R. 509. Office treatment records from GMHC, R. 519–25, show that Plaintiff had a 45-minute appointment on March 21, 2013, for depression and signs and symptoms of posttraumatic stress disorder. R. 520. Charlene Reeves, LMHC,[1] diagnosed the following:

| | |
|---|---|
| Axis I: | 296.32 Recurrent major depression, moderate.<br>309.81 Posttraumatic stress disorder.<br>V62.82 Bereavement. |
| Axis II: | 799.9 Deferred. |
| Axis III: | Acid reflux, sleep apnea, fibromyalgia, allergies to BACTRIM and CODEINE also chronic pain, back pain. |
| Axis IV: | Level of stressors: #3. |

---

[1] Licensed Mental Health Counselor.

      Axis V:       Current GAF: 55.

R. 521–22. Plaintiff did not show for her next appointment on April 4, 2013. R. 523. On April 15, 2013, she spent 30 minutes with Ms. Reeves, who reported that Plaintiff stated she was feeling overwhelmed. R. 524. Ms. Reeves saw Plaintiff again on May 1, 2013, and concluded that Plaintiff

> does not meet the criteria for recurrent major depression, possibly posttraumatic stress disorder connected with the experience at age 14 where her father died downstairs when her mother had told her not to go down there. Bereavement is another Issue for the client and some anxiety at times. Treatment will focus on helping the client learn to cope with her emotions and to talk about her losses.

R. 528. Ms. Reeves saw Plaintiff again on May 30, 2013, and noted Plaintiff was maintaining sobriety, still depressed, with some negative thinking and some helplessness. R. 531.

The next record is of a visit dated July 2, 2013. R. 532. Gregory L. Seeger, M.D., saw her. R. 533. He made changes to Plaintiff's medications, and reported the following regarding his mental status exam:

> Rate and volume of speech are within normal limits. She does report racing thoughts, no signs of loose associations. The patient is nonpsychotic. She is not homicidal or suicidal. Judgment is fair. Insight is fair. Patient is fully oriented. Memory functions are intact. Concentration is poor, she states. Patient moderately depressed, mildly anxious. She is not agitated. She does get periodic panic attacks. She is not manic or labile. Grooming and hygiene is quite good.

R. 532.

On August 9, 2013, Aloye Marks, R.N, saw Plaintiff. R. 534. Ms. Marks noted that Plaintiff was mildly depressed, and continuing to take her medications. *Id*.

Ms. Reeves saw Plaintiff on August 15, 2013, and suggested that Plaintiff engage in more regular therapy. Ms. Reeves noted that Plaintiff had been diagnosed with borderline personality disorder in prison. R. 535. On November 6, 2013, Ms. Reeves prepared a Discharge Summary/Service Plan. R. 536. She noted that Plaintiff irregularly visited the clinic, that Plaintiff reported, "she could become overwhelmed easily," that she had not dealt with losses in her life, that she had been experiencing some anxiety during her last visit on August 15, 2013, and that she canceled her August 28 appointment and was a no show for her September 4 appointment. The report concludes with this:

> The client moved into an apartment, address unknown, phone number unknown. We were unable to be in contact with her. Client also has a case manager who was unable to be in contact with her as well at this point, it is not known where client is. She is being discharged lost to contact.

R. 536–37.

The Commissioner's regulation states that "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." Here, the treating source is primarily an LMHC, who is not an "acceptable medical source," her conclusions thus need not be given controlling weight. Likewise, Dr. Finnity is not a treating source, although she is an "acceptable medical source." Nevertheless, the ALJ could give greater weight to the LMHC's opinion consistent with Social Security Ruling 06-03p, which states in relevant part as follows:

> [D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable

medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."

Titles II & XVI:II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernment, SSR 06-03P (S.S.A. Aug. 9, 2006).

In addition to the medical sources discussed above, the ALJ also relied on the non-examining review psychologist J. Echevarria, Ph.D., who reviewed Plaintiff's medical records in a report dated May 3, 2013. R. 84. Dr. Echevarria opined that Plaintiff "would have some difficulties performing complex tasks without supervision, [and] dealing with others and stress." R. 84. With regard to her mental RFC, Dr. Echevarria concluded that she had moderate limitations on her abilities in the following areas: to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule; to maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or in proximity to others without be distracted by them; to complete a normal workday and workweek without interruptions form psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the

work setting; to travel in unfamiliar places or use public transportation; and to set realistic goal s or make plans independently of others. R. 86–88.

With regard to the form Dr. Finnity used, it defined three categories:

| | |
|---|---|
| Normal functioning | No evidence of limitation. |
| Moderately limited | Unable to function 50% of the time. |
| Very limited | Unable to function 75% or more of the time. |

R. 637. However, the Social Security Administration uses different definitions:

> When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

20 C.F.R. § 404.1520a(c)(4). Dr. Finnity's three-point scale does not correspond to the Social Security five-point scale. Thus, her definition of "moderate" more closely approximates the Social Security's term "marked." Therefore, it is important that Dr. Finnity's report support the determination that Plaintiff would be unable to function in that ability area 50% or more of the time.[2]

> Degrees of limitation. We evaluate the effects of your mental disorder on each of the four areas of mental functioning. To satisfy the paragraph B criteria, your mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Dr. Finnity's report stated that Plaintiff's psychiatric problems "may" significantly interfere with her ability to function on a daily basis. R. 511. Nevertheless, she reported that:

---

[2] However, below the Court discusses the second hypothetical question posed by the ALJ that used a 20% figure.

> There is no evidence in limitation of the claimant's ability to follow and understand simple directions and instructions and perform simple tasks. She is mildly limited in her ability to maintain attention and concentration. She is mildly to moderately limited in her ability to maintain a regular schedule due to psychiatric symptoms. There is no evidence in her limitation to learn new tasks, perform complex tasks, or make appropriate decisions. She is moderately limited in her ability to relate with others and deal with stress due to psychiatric symptoms.

R. 511.

Plaintiff also argues that the ALJ did not address the report by Karyn Dietz, MHC, dated August 26, 2014. R. 647–50. In that report, labeled Exhibit 19F in the Record, MHC Dietz wrote that Plaintiff became a client of hers on November 26, 2013, and she last examined her on August 26, 2014. R. 647. MHC Dietz conducted a mental status examination and determined that Plaintiff was anxious, had a mildly depressed mood, was oriented times three with normal speech and behavior. Nevertheless, she concluded that Plaintiff was moderately limited (defined on the form as unable to function 10% to 25% of the time) in the areas of: following, understanding and remembering simple instructions; the capacity to maintain attention and concentration for rote tasks; and the capacity to regularly attend to a routine and maintain a schedule. R. 649. MHC Dietz found that Plaintiff was unable to participate in any activities other than treatment for four months, finding that "further stress is likely to increase symptoms and negatively impact [patient]." R. 650.

The ALJ addressed MHC Dietz's report, writing: "The form at Exhibit 19F is afforded limited weight, and fails under SSA rules and regulations for the same reasons espoused for Exhibit 17F." R. 29. Exhibit 17F is Dr. Finnity's report.

*Analysis*

Dr. Finnity's conclusion that Plaintiff would be unable to do any work from March 21, 2013, until after six months does not meet the criteria of disability, which requires a 12-month duration of the illness preventing her from working. The same applies to MHC Dietz's four-month restriction.

Nevertheless, the mental health assessments in the Record primarily show a moderate limitation in the area of concentration. This is important because of the ALJ's hypothetical questions to the vocational expert. The ALJ's questions to the vocational expert incorporated the following limitations:

> Q All right. Assume a hypothetical individual the same age, education, and work experience as the claimant, who had the residual functional capacity to perform the full range of light work; should avoid working around heavy machinery and driving; should be limited to simple, routine tasks; and should interact with the coworkers and general public on no more than an occasional basis….
>
> Q Are there … occupations unskilled in nature that such an individual could perform?
>
> A Yes, I believe so. One moment, please. Cleaner, housekeeping, 323.687-014, SVP is 2. The work is light; 375,130 jobs in the national economy. Also, mail clerk, 209.687-026, an SVP 2. The work is light, 131,500 jobs in the national economy.
>
> Q Hypothetical #2, assume the limitations that I gave you in the first hypothetical, but assume the individual would be off task about 20% of the time due to impaired concentration. Could that individual perform any unskilled work in the economy?
>
> A That individual could not sustain work, no.

R. 74–75. As noted by Judge Sharpe of the Northern District of New York in *Reynolds v. Colvin*, No. 3:13-CV-396 (GLS/ESH), 2014 WL 4184729 (N.D.N.Y. Aug. 21, 2014):

> Terms like "none" and "extreme" carry common, natural-language meanings not likely to generate misunderstanding or ambiguity when used to rate functional mental limitations. Terms like "mild," "moderate," and "marked," however, are inherently vague, and the Commissioner has provided no illuminating term-of-art definitions.[15] Logically, "moderate" fits somewhere within the middle of a spectrum, and Reynolds cites several cases wherein courts, under various and non-analogous factual scenarios, have equated "moderate" with a mid-range mathematical percentage describing the amount of time a person with a moderate limitation is unable to perform competitive work.[16] A person unable to perform work 10% of the time would fit easily within these cases' definitions of "moderate."

*Reynolds v. Colvin*, No. 3:13-CV-396 GLS/ESH, 2014 WL 4184729, at *4 (N.D.N.Y. Aug. 21, 2014) (footnote omitted). In a footnote, Judge Sharpe referred to the Commissioner's Program Operations Manual System, which reads in pertinent part as follows: "'Moderately Limited,' when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired. NOTE: The degree and extent of the capacity or limitation must be described in narrative format in Section III." Program Operations Manual System (POMS) DI 24510.063, *available at* https:// secure.ssa.gov/apps10/poms.NSF/lnx/ 0424510063 (last visited October 17, 2017).

Because the vocational expert testified that if Plaintiff were off task about 20% of the time due to impaired concentration, no jobs would be available, the Record does not contain substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled. The medical evidence concerning Plaintiff's mental state lists several abilities in which she is moderately impaired. As Judge Sharpe points out in *Reynolds*, a moderate impairment fits somewhere within the middle of limitations in the five-point scale. If the scale were equal to 100%, then moderate would fit in the 20% range (*i.e.* 100 ÷ 5 = 20). In her earlier report, Dr. Finnity concluded Plaintiff was moderately limited in her ability to maintain concentration. R. 637. In her later report, Dr. Finnity determined Plaintiff was mildly limited in her

ability to maintain concentration. R 511. R.N. Marks noted that Plaintiff reported her concentration was poor. R. 532. Dr. Echevarria concluded that Plaintiff had a moderate limitation in her concentration. The ALJ's decision does not reconcile these competing viewpoints to determine that Plaintiff had less than a moderate limitation in concentration. Thus, when he asked the second hypothetical concerning a 20% inability to be on task due to concentration problems, and got a negative response from the vocational expert, he failed to address that question and answer in his decision, especially in light of the majority of medical opinions that Plaintiff suffered a moderate inability to concentrate. Consequently, the Court reverses the Commissioner's decision and remands the case for further proceedings.

## CONCLUSION

Defendant's motion for judgment on the pleadings is denied; Plaintiff's motion for judgment on the pleadings is granted. The Commissioner's decision is reversed and remanded for an expedited rehearing pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk is directed to close this case.

So Ordered.

Dated: March 5, 2018
       Rochester, New York

                ENTER:

                        /s/ Charles J. Siragusa
                        CHARLES J. SIRAGUSA
                        United States District Judge